The last case being argued is Cicel Beijing Science & Technology Co., Ltd. v. Misonix, Inc. Mr. Biagi, I see you reserve two minutes for rebuttal. You begin whenever you're ready. Yes, good. Thank you. Thank you, Your Honor. May it please the Court, my name is Mario Biagi and I represent Cicel Industries in connection with this proceeding, who, by virtue of a termination of a contract, has sustained substantial financial damages and significant damages to its reputation, not only in the Chinese community in China, but internationally. And we respectfully submit that in that context that Cicel and the law requires some identification as to what the basis for that termination was, specifically the bribery charges and the affirmative defense of illegality. To date, we do not have questions as to the nature of the bribe, who committed the bribe, what was it for, how much was it for, when did it happen, and what contract did it procure. But you don't need that, right, Mr. Biagi? In other words, if someone admitted to them we were bribing these entities, they don't have to wait until they have particular instances, right? That's true. There's uncontroverted evidence of bribes. Right, but that's not the case in this particular proceeding. There is controversial evidence. And where the Court made a mistake was they did not give, as they're supposed to do on a motion for summary judgment, give favorable inferences to the plaintiff's evidence. Well, some of the e-mails… I mean, how do you get favorable inferences from the e-mails that were produced at some point? Well, I can't discuss all of them, all the e-mails. Let me give you a couple of them. Right, but can you defend each one? I mean, Cicel is saying that they engage through agents in this kind of bribery. They're claiming because they don't do it personally, but they hire people to do that or they retain people in some way to do it. Why is that enough? My response to that is twofold. One, we gave alternate explanations, reasonable alternate explanations in our papers with respect to that. But let me give you two examples of the e-mails, why that can't be as a matter of law. There's a Battles e-mail, an employee in April of 2017, in which that contention that Cicel was involved in bribery cropped up. Now, what the court didn't consider and what's in the evidence is that this testimony from Mr. Battles that as of February 2016, he did not know of any bribery that Cicel committed, and he thought that that was difficult for them in terms of being competitive with all those other subsidiary companies that do engage in the bribery. That's what he said as far as February 2016 concerned. The e-mail that the court relied on, that was in April of 2016, and only two things happened differently in the interim. One, there was testimony that he became fearful for his job, okay? There was pressure on him, and he became the virtue of a whistleblower. So that's a question of fact. Let's put that one aside, Mr. Biagi. The one I want you to focus on, as a result of the internal investigation, they uncovered a draft e-mail. This is 529 of the appendix, from September 2014, written from sunny to May. And it says, APD, one of the sub-divisions, has good experiences on handling business under the table. Sometimes it's very helpful. Sometimes it's very dangerous. So for big cities such as Shanghai and Guangzhou, we could not take that risk. We would rather be safe. And this is the one I want you to address. But for some small place, where under-table business is very popular and well-accepted, APD may help. Or maybe we could cooperate with them on some specific project. I mean, explain how that could be inferred to be anything other than an admission that they're willing to have APD engage in bribes in small cities, where they can't get caught. Mr. Dobash, who testified about that, oddly enough, the people that were pushing ADP, and I should be entitled to argue this to a jury, was not, Mike, was not saying that. I know. That was the answer of the president of your company to that particular e-mail. Not that this is, you know, that there's some alternative interpretation. Her answer was, they were pressuring us. We were worried we were going to be terminated. So, but that's not a defense to illegality, right, that we were pressured? Well, the issue is, they were pushing the issue, first of all, and it's Mr. Dobash's testimony. But the alternate explanation for that is that they did not want to use this company, APD, and certainly didn't want to use them in the large cities, and only would use them in the small cities if they could supervise them and keep track of that. Now, there's an alternate explanation. There's nothing in there that says that. And that explanation, you're the president of the company. You didn't even give that explanation at the deposition. You're making that up. She didn't say, we were going to supervise them in the small cities. That's your. That's a fair comment on the evidence. In total, of all the evidence that was in this record, if you want to parse one statement, then you have to compare about the self-reporting letter, for example, that was sent to the Department of Justice, in which there was a massive investigation that was done here, massive. And no one came up with any crime. No one came up with any crime. Well, we're not talking about crimes, specific crimes. I mean, you keep arguing that, that there has to be proof of a bribe that would meet the definition under the elements under Title 18. That's not what this is all about. This is a defense of illegality going on that, you know, can be raised. And of wrongdoing. And if this isn't evidence, blatant evidence of wrongdoing, it's hard to see any other avenue. I would respectfully disagree with that, Your Honor. The Swigwiler case talked about improving an affirmative defense of illegality, right? You have to satisfy the elements of the crime. In the case of Swigwiler, it was bribery. Well, and in cases where there is specific evidence, of course, and that's the proof that's been used to assert the defense, that's a different kind of case. But just going on as if business was usual, and that here, and not being able to assert the defense under these circumstances, it seems really pretty far-fetched to me. Well, this, I believe, is fair comment. In the totality of all the evidence and all the exoneration of what they did and didn't do, I should be able to present that to a jury and address this one issue that- Well, but there's no confusion about the fact that these intermediary distributors were put into the position by your client. That's not disputed, I don't think. No, that actually is disputed. Oh, you mean they just sort of injected themselves into the picture? No, no. What happened is there's an alternate theory here. First of all, with respect to APD, it was Ms. Sonics who was pushing that issue. That's what the testimony was of Mr. DeBasch at 2195 of the record. They were the ones pushing the issue with APD. They didn't want to use APD, okay? So- Well, are you saying that somehow your adversary's client was responsible to a degree for whatever went on here? I'm saying what they wanted to do, there's a reasonable argument to make on the record that they wanted to utilize those subcontractors that were more inclined to engage in the type of conduct that they were accusing CICEL of. Then there's records in there. In fact, is it- Why is that relevant if CICEL was also on board? In other words, two wrongdoers, one of whom blows the whistle and the other doesn't. The other is the blowee, if you will. Well, the problem with that is you're basically affirming a defense and affirming a defense without any evidence, any evidence of the actual legality. How could they not in the midst of all of the evidence, much of which is exculpatory, much of which is exculpatory, take this one isolated email and say, okay, they're guilty of a crime. What crime? All right. Thank you, Mr. Biagi. We'll hear from Mr. Cleary. May it please the Court, Richard Cleary on behalf of Apelli Masonics. For three reasons, this Court should affirm the judgment below. First, CICEL's emails admit to bribery, satisfying the first element of New York's illegality defense. The rest of the record corroborates those admissions. Second, CICEL's admitted illegal conduct was central to or a dominant part of its course of conduct in connection with the contract, satisfying the second element of New York's illegality defense. And third, with respect to CICEL's defamation claim, Masonics' statement in the 8K was true and in any event is protected by absolute or at a minimum qualified immunity. With that, I'm happy to take questions from the panel. Well, I think, you know, I picked out the draft email because I think there are portions of those other emails that, you know, it's kind of broken English. There's certain things in there. One says, you know, we find bribes to be appalling. And I think significantly your CEO, Mr. McManus, in looking at these emails and having received some of these emails said that he interpreted them the way that Mr. Biagi is suggesting, that he interpreted these as CICEL trying to avoid these types of payments. So his argument is that at least on those, there's a credibility assessment and they have your own CEO to support that there's a plausible reading of these emails that would support them. What's your response to that? Your Honor, two responses. So first, the emails speak for themselves. They were drafted by three different high-ranking CICEL officials, including the CEO. There are five emails over the course of three years. They are remarkably consistent in describing the bribery scheme. And second, with respect to the CEO said this. This is his deposition testimony. Your client says that he interpreted the CICEL's emails. The CICEL had to have control of who their sub-distributors were because if they didn't pick the sub-distributors themselves, they would wind up with sub-distributors that make payments, and they didn't want to deal with those kind of sub-distributors. So this is your client interpreting these emails to mean that they didn't want to deal with those kind of distributors. So why isn't that at least on that created a jury issue? Your Honor, Mr. McManus' testimony does not create a genuine dispute of material fact for four reasons. First, he was not read in on the audit investigation of these issues. Second, he was only on two of the five emails. Third, when confronted with the APD email draft at CA 529 that Your Honor quoted from earlier in this argument, he was concerned and said he would follow up. And fourth, Mr. McManus was not told about CICEL's 2014 bribery fine and testified that it would have affected CICEL's relationship with Masonics. You would have us believe or conclude that there simply were no genuine issues of material fact. Is that right? That's correct, sir. All right. In other words, you're saying that a jury would be compelled to find for you under the evidence, as a matter of law. That's right, Judge Walker. There is no reasonable reading of the emails other than as a confession, as multiple confessions over multiple years to illegality on the part of CICEL. But they do have a view of this, right? There is another view. Perhaps we shouldn't give it much weight or credence. But Mr. Biagi and his clients have a very different interpretation of these matters. Is that fair? There is a dispute. The question is whether it is a genuine dispute as to material fact. And it's not genuine because? Because the emails simply don't describe a scheme to evade bribery. They describe a scheme to facilitate bribery. Bribery is an issue. CICEL does not directly handle these matters. Instead, they enlist sub-distributors to handle these matters to facilitate bribes to the end user to place Masonix's products. That's what the emails say. Unless there were any questions, there's additional evidence that corroborates the emails in the record. So you're saying when there's an email that says you should believe we would never get ourselves involved in such troubles, you're saying the only interpretation of that is that they can use the sub-distributors to do it and not themselves. That's not a statement by them that we don't do this, period. Is that accurate or not? The two sentences after that describe, if I'm recalling the same email, the use of sub-distributors to effectuate. On the same page, what date was that email? If you recall. This one is on 5-20. Yes, 5-20. That's the August 26, 2013 email, Judge Walker. So that's the one that says in such cases we will definitely seek for cooperation with sub-distributors. Yes, that's right. All right, thank you. Thank you, Your Honor. And we respectfully request that the panel affirm. Thank you. Two, three points, very important, especially since the last two were not, I don't think, clearly covered in the submission papers. My opening to the jury. They're saying we committed illegality, ladies and men of the jury, five years ago based on the same evidence. There was no proof, and they said there wasn't anything illegal about what we did. Isn't that a create an issue of faction? I'd be allowed to make that argument with all the other arguments before the jury. Could you lift the microphone so we can hear you? Oh, I'm sorry. No, it's all right. Yeah, I think I should. Now, what's very important here, if I could just focus you, is on the absolute and qualified immunity. There is no absolute immunity here on this Steger case. There is no absolute immunity because it's restricted, and in a quasi-judicial proceeding with respect to the defamation claim, you can't have absolute immunity if there's no procedural safeguards that CISL was entitled to, like a hearing. There was no hearing before the Securities and Exchange Commission, and because of that, there is no claim for absolute immunity. In fact, Masonic said they didn't have jurisdiction over CISL. They used that argument in a different format when they were trying to say we were trying to say let's get the benefit of their findings. So there is no absolute immunity. There is no qualified immunity because there's an issue of fact as to whether or not the termination of CISL was malicious or reckless disregard for the truth. If it was, it's an issue of fact. This Court can't determine as a matter of law that there is no qualified immunity. I say that's important because, quite frankly, upon review of the papers, it might have got lost a little bit in the interpretation. Thank you very much. All right. Thank you to both of you. We'll reserve the decision. Have a good day.